UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES BOLAND et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **CACPER CONSTRUCTION CORP. et al.**, <br><br> Defendants. | Case No. 14-cv-01943 (CRC) |

### MEMORANDUM OPINION AND ORDER

On November 19, 2014, trustees of two union pension funds brought an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 et seq., to recover unpaid contributions to those funds from a defunct New York construction company and its principal, Adam Kulig. Defendants never responded to the complaint, the Clerk's entry of default, or the Court's Order to Show Cause why judgment should not be entered against them. Plaintiffs moved on March 19, 2015 for an entry of default judgment against the company and Kulig. On July 16, 2015, the Court issued an order granting Plaintiffs' motion as to the company, but denying their motion as to Kulig, noting that "liability for delinquent pension contributions ordinarily does not extend to individual corporate officers." Mem. Op. & Order 1.

In a second effort to hold Kulig liable, Plaintiffs moved on August 13, 2015 to alter or amend the judgment, claiming that the Court "misapprehen[ded] . . . the basis for [their] claim for personal liability" against Kulig. Pls.' Mot. Alter or Amend J. 1. Plaintiffs suggest that the Court mistakenly understood them to argue that Kulig was "liable for delinquent pension contributions simply by virtue of his status as a corporate owner or officer," id., when they were actually arguing that Kulig was liable "based on the uncontested and therefore conceded allegation that he continued to carry on the business of Cacper Construction, beyond that necessary to wind up its affairs, after

the company was dissolved," id. at 1–2. According to Plaintiffs, because "there is ample New York caselaw holding a corporate owner personally liable in these circumstances, the Court's July 16, 2015 judgment should [be] altered so as to include a default judgment against Kulig." Id. at 2.

If Plaintiffs intended to argue that Kulig had taken on Cacper Construction's liability, under New York law, as a result of entering into collective bargaining agreements on Cacper's behalf after it had dissolved, one would not know it from reading Plaintiffs' Complaint or Motion for Default Judgment. Indeed, Plaintiffs made only the conclusory allegation that "Kulig has continued to carry on the business of Cacper Construction after October 26, 2011 beyond that necessary to wind up its affairs." Compl. ¶ 15. Plaintiffs never spelled out what Kulig did to carry on the business of Cacper, making it difficult to determine whether his actions were or were not "necessary to wind up [Cacper's] affairs." This perfunctory presentation on Plaintiffs' part led the Court to understand that Plaintiffs sought to hold Kulig "liable for delinquent pension contributions simply by virtue of his status as a corporate owner or officer." Pls.' Mot. Alter or Amend J. 1.

Nonetheless, based on the Court's own review of the collective bargaining agreements submitted by Plaintiffs with their complaint, it appears that Kulig did in fact operate Cacper Construction in a manner beyond that necessary to wind up its affairs post-dissolution. And based on the case law of New York—which Plaintiffs neglected to cite or reference anywhere in their memorandum of support for their Motion for Entry of Default Judgment—the Court concludes that Kulig is personally liable for the delinquent contributions. The Court will therefore amend its judgment of July 16, 2015 so as to include a default judgment against Kulig in the full amount of $31,367.22.

**I.     Background**

As detailed in the Court's July 16, 2015 Memorandum Opinion and Order, Cacper Construction Corp. is a dissolved New York corporation that employed members of the

International Union of Bricklayers and Allied Craftworkers. Compl. ¶¶ 5, 7. The construction company and the union entered into collective bargaining agreements that obligated Cacper to make payments to the Bricklayers & Trowel Trades International Pension Fund ("IPF") and the International Masonry Institute ("IMI"). Id. ¶ 7. These contributions funded pensions and other benefits to employees working under contracts negotiated by Bricklayer local unions and employers. Stupar Decl. ¶ 3.

The IPF and the IMI are "employee benefit plans" and "multiemployer plans" under ERISA. With these designations come certain obligations. Pursuant to ERISA and the funds' written procedures governing the collection of employer contributions ("Collection Procedures"), Cacper was required to submit monthly reports and payments to the IPF and IMI for covered employees. Stupar Decl. Attach. 1, at 1. Because Cacper failed to make the required contributions, the trustees were entitled to file suit to recover (1) 15 percent interest on those unpaid contributions; (2) an additional assessment of 15 percent interest per year or 20 percent of the delinquent contributions, whichever is higher; and (3) attorneys' fees and other litigation costs. See id. at 1–2; accord 29 U.S.C. § 1132(g)(2) (A fiduciary may file suit "for or on behalf of a plan to enforce section 1145 of this title").

Plaintiffs, trustees of the IPF and the IMI, alleged that Cacper failed to make payments during various periods between September 2012 and June 2014. Compl. ¶ 11. Plaintiffs contended that Adam Kulig, the owner, had continued operating the business—even though Cacper's corporate status was dissolved in 2011—and is liable for the debts and obligations of the company. Id. ¶¶ 14–15. The defunct corporation and Kulig were properly served in February 2015. Pls.' Mot. Default J. 1; Return Service Affs. (ECF Nos. 4, 6). Neither responded to the complaint, and the Clerk of the Court entered default. Pls.' Mot. Default J. 1–2. Plaintiffs moved for entry of default judgment against both Cacper and Kulig. Id. at 2. They sought statutory and contractual

3

contributions, interest, attorneys' fees and costs, and an order directing Cacper to comply with its obligations to the IPF and the IMI. In all, Plaintiffs sought $31,367.22 in damages for the pension funds. Id. at 2.

## II.     Standard of Review

Plaintiffs' motion raises two issues: first, whether the Court may amend its judgment of July 16, 2015, and second, whether an entry of default judgment against Adam Kulig is appropriate. This Court has the discretion to alter or amend its judgment pursuant to Federal Rule of Civil Procedure 59(e). See Flynn v. Dick Corp., 565 F. Supp. 2d 141, 145 (D.D.C. 2008) ("The decision to grant or deny a motion to alter or amend judgment is within the discretion of the district court."), order amended on reconsideration, 620 F. Supp. 2d 33 (D.D.C. 2009). The Court may choose to exercise this discretion if, for instance, it has "misapprehended a party's position." Id.

Plaintiffs' quest for a default judgment involves a two-step procedure. See Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea, 962 F. Supp. 2d 152, 161 (D.D.C. 2013). First, a plaintiff must request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, a plaintiff must move for entry of a default judgment. Fed. R. Civ. P. 55(b). Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Id. After establishing liability, a court must make an independent evaluation of the damages to be awarded, and it has "considerable latitude in determining the amount of damages." Id. Plaintiffs must "prove [their] entitlement" to the relief requested using "'detailed affidavits or documentary evidence' on which the court may rely." Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Solution Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)).

**III.   Analysis**

In light of Plaintiffs' clarification that Kulig should be held personally liable under New York law as a result of his actions after the dissolution of Cacper, the Court concludes that Federal Rule of Civil Procedure 59(e) permits it to alter or amend its prior judgment, in which it declined to enter default judgment against Kulig. Mem. Op. & Order 1. The Court must still determine whether entry of default judgment against Kulig is appropriate and, if Kulig is liable, whether Plaintiffs are entitled to the full amount of relief they request. The Court concludes that Kulig is personally liable for Cacper's breach of its duties under ERISA and the Collection Procedures and that Plaintiffs are entitled to the full amount of relief requested.

   A.   <u>Liability</u>

Plaintiffs filed suit in November 2014 to recover the damages prescribed by ERISA and the Collection Procedures. Compl. ¶ 1. Cacper was served with the Summons and Complaint on February 2, 2015, and Kulig was served with the Summons and Complaint on February 5, 2015. Pls.' Mot. Default J. 1; Return Service Affs. (ECF Nos. 4, 6). The Clerk of the Court declared Cacper to be in default on February 26, 2015 and Kulig to be in default on March 4, 2015. Pls.' Mot. Default J. 2. The Court mailed an Order to Show Cause why judgment should not be entered for Plaintiffs to both Defendants on May 4, 2015. Neither Defendant has responded to the Complaint, the Clerk's entry of default, or the Court's Order to Show Cause.

   1.   <u>Cacper Construction Company's Liability</u>

Because the Clerk of the Court has entered default, the Court accepts Plaintiffs' well-pled allegations as true to determine whether Defendants are liable and entry of default judgment is appropriate. <u>Elite Terrazzo Flooring</u>, 763 F. Supp. 2d at 67. ERISA requires employers to make contributions to multiemployer plans "in accordance with the terms and conditions of" the relevant collective bargaining agreements. 29 U.S.C. § 1145. The IPF's and IMI's Collection Procedures

5

specify that contributions are due "on or before the 15th day of the month" after the month in which work was performed. Stupar Decl. Attach. 1, § 1.A.1. Plaintiffs submitted the declaration of David F. Stupar, the Executive Director of the IPF and an authorized representative of the IMI, which set forth in detail Cacper's failure to make the required payments for various months between September 2012 and June 2014. Stupar Decl. ¶¶ 9–10. As the Court held in its Memorandum Opinion and Order of July 16, 2015 by failing to make these payments on time, Cacper became liable for statutory and contractual damages. The Court may enter default judgment when a defendant makes no request "to set aside the default" and gives no indication of a "meritorious defense." Fanning, 257 F.R.D. at 7. Cacper had not responded as of July 16, 2015 to the Complaint since being served in February. The Court therefore concluded that entry of default judgment against Cacper was appropriate. Mem. Op. & Order 1.

2. Adam Kulig's Liability

Kulig was also properly served and has not responded, and the Court now reconsiders whether, in light of Plaintiffs' clarification, default judgment against Kulig is appropriate. Although "liability for delinquent pension contributions . . . does not [ordinarily] extend to an individual corporate owner or officer," Int'l Broth. of Painters & Allied Trades Union v. George A. Kracher, Inc., 856 F.2d 1546, 1550 (D.C. Cir. 1988), the law of New York—where Cacper was incorporated—may impose personal liability on Kulig if he took significant action on Cacper's behalf after Cacper had dissolved, see 80-02 Leasehold, LLC v. CM Realty Holdings Corp., 999 N.Y.S.2d 158 (2014).

Plaintiffs support their assertion that "Kulig . . . continued to carry on the business . . . after [it dissolved] beyond that necessary to wind up its affairs," id., by providing copies of the "collective bargaining agreements [signed by Kulig,] . . . which obligated Cacper Construction to submit monthly reports and payments to the IPF and IMI on behalf of its covered employees."

6

Stupar Decl. ¶ 9. Kulig appears to have signed one of these agreements on December 13, 2012, which purports to extend an earlier agreement from July 1, 2012 through June 30, 2015. Compl. Ex. B. Kulig's signature on this agreement indicates that he was conducting significant business on behalf of Cacper well after it dissolved in October 2011 and that he was entering into contractual obligations on the dissolved corporation's behalf in his capacity as its owner and operator. The Court therefore finds that Kulig entered into a contract on behalf of a dissolved corporation, in addition to serving as an officer of that dissolved corporation.

Under New York case law, a person purporting to act on behalf of a dissolved corporation can be held personally liable for any liability that he caused the corporation to incur. For example, in 80-02 Leasehold, LLC, a New York appeals court observed, "Upon dissolution, [a] corporation's legal existence terminates and it is prohibited from carrying on new business. . . . It retains a limited de jure existence solely for the purpose of winding up its affairs." Id. at 160. The court went on to hold that "[a] person who purports to act on behalf of a dissolved corporation is personally responsible for obligations incurred." Id. at 160. This "liability is not limited to the person who executes a contract on behalf of a dissolved corporation, but extends to the officers of the dissolved corporation." Id. Additionally, in a recent ERISA case, the U.S. District Court for the Eastern District of New York held that a sole proprietor could be personally liable under a collective bargaining agreement for ERISA obligations if that person "acted on behalf of a nonexistent corporation." LaBarbera v. Avaline Trucking Inc., No. 07–CV–4698 (NG)(SMG), 2009 WL 3497491, at *4 (E.D.N.Y. 2009). The court found that "by signing the [collective bargaining agreement] and doing business on behalf of a nonexistent corporation, [a person] assume[s] personal liability for the obligations the [collective bargaining agreement] imposes on" the corporation. Id. Such a person, the court ruled, "qualifies as 'an employer' under [ERISA] and is personally liable for plaintiffs' claims pursuant to that statute." Id.

Because a corporation's legal existence terminates (except for very limited purposes) when it is dissolved, and because Cacper appears to have been dissolved when at least one of the agreements at issue here was signed, a person who entered into such an agreement on Cacper's behalf would be personally liable under New York law. Plaintiffs have asserted and provided evidence to show that Kulig entered into an agreement on Cacper's behalf under these circumstances. As a result, because a default judgment against Cacper was appropriate in this case, so too is a default judgment against Kulig. Having previously held that Plaintiffs are entitled to $31,367.22 from Cacper Construction Corp., the full amount of relief requested, Mem. Op. & Order 5–7, the Court will enter judgment against Adam Kulig in the same amount.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [13] Plaintiffs' Motion to Alter or Amend Judgment is **GRANTED**. It is further

**ORDERED** that [12] the Order of July 16, 2015 is **VACATED** as to the dismissal of claims against Defendant Adam Kulig. It is further

**ORDERED** that Plaintiffs are awarded a monetary judgment against Adam Kulig in the amount of $31,367.22.

This is a final, appealable order.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date:   September 17, 2015